Appeal No. 2021-2166

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

IN RE: JUSTIN SAMUELS, SAMUEL ROCKWELL,
APPELLANTS.

Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board in Application No. 15/168,768

# BRIEF FOR DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE

FARHEENA Y. RASHEED
Acting Solicitor

AMY J. NELSON
Acting Deputy Solicitor

PETER J. AYERS
Senior Counsel for Patent Law and
Litigation

OMAR F. AMIN
Associate Solicitor

Office of the Solicitor
U.S. Patent & Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313-1450
(571) 272-9035

December 13, 2021

*Attorneys for the Director of the USPTO*

# SOLE CLAIM ON APPEAL

1. An asymmetrical planar waffle product, comprising:

a first patterned baked surface that is a negative image of a first positive relief pattern in an associated first baking plate, and a second patterned baked surface that is a negative image of a second positive relief pattern in an associated second baking plate,

wherein said first and second patterned baked surfaces have been formed by exposing a waffle-forming material directly against said respective first and second positive relief patterns,

wherein said waffle-forming material is selected from the group consisting of batter and dough,

wherein said first positive relief pattern is a waffle pattern,

wherein said second positive relief pattern is a smooth surface, and

wherein at least one of said first and second baking plates further comprises a stop extending above said first and second positive relief pattern to limit proximity of said baking plates to each other, thereby defining a chamber therebetween for receiving said waffle-forming material.

# TABLE OF CONTENTS


STATEMENT OF THE ISSUES ........................................................ 1

STATEMENT OF THE CASE ........................................................ 2

I. THE ’768 APPLICATION ........................................................ 2

II. THE PRIOR ART ........................................................ 4

III. PROCEEDINGS BEFORE THE EXAMINER ........................................................ 6

IV. APPEAL TO THE BOARD ........................................................ 7

SUMMARY OF THE ARGUMENT ........................................................ 11

ARGUMENT ........................................................ 13

I. STANDARD OF REVIEW ........................................................ 13

II. THE BOARD RIGHTLY DETERMINED THAT CLAIM 1 WOULD HAVE BEEN OBVIOUS OVER KREPSHAW IN VIEW OF FREEMAN ........................................................ 14

III. APPELLANTS’ ARGUMENTS LACK MERIT ........................................................ 16

A. Appellants Were Afforded Adequate Notice and a Reasonable Opportunity to Challenge the Examiner’s Reliance on Freeman ....... 16

B. Appellants Failed to Introduce the Big Boss Grill Manual or Recipe Book into the Record ........................................................ 22

C. The Obviousness Rejection Does Not Rely on Hindsight ........................................................ 28

D. There is Substantial Evidence of Reasonable Expectation of Success ........................................................ 30

E. There is No Evidence of Teaching Away ........................................................ 33

F. There is No Evidence of Long-Felt But Unsatisfied Need ........................................................ 35

G. There is No Evidence of Unexpected Results ........................................................ 36

CONCLUSION ........................................................ 38

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Acorda Therapeutics, Inc. v. Roxane Labs., Inc.*,
903 F.3d 1310, 1328 (Fed. Cir. 2018) ....................................................13

*Adler, In re*,
723 F.3d 1322 (Fed. Cir. 2013) ....................................................19

*Bayer Aktiengesellschaft, In re*,
488 F.3d 960 (Fed. Cir. 2007) ....................................................14

*Belden Inc. v. Berk-Tek LLC*,
805 F.3d 1064 (Fed. Cir. 2015) ....................................................20

*Biomedical Research Inst. at Harbor-UCLA Med. Ctr. v. Eli Lilly & Co.*,
849 F. 3d 1049 (Fed. Cir. 2017) ....................................................31

*Brandt, In re*,
886 F.3d 1171 (Fed. Cir. 2018) ....................................................34

*CFMT, Inc. v. Yieldup Int'l Corp.*,
349 F.3d 1333 (Fed. Cir. 2003) ....................................................36

*Chapman, In re*,
811 F. App'x 647 (Fed. Cir. 2020) ....................................................22

*Consol. Edison Co. v. NLRB*,
305 U.S. 197 (1938)....................................................13

*De Blauwe, In re*
736 F.2d 699 (Fed. Cir. 1984) .................................................... 36-37

*Devices for Medicine, Inc. v. Boehl*,
822 F.2d 1062 (Fed. Cir. 1987) ....................................................25

*Dow Chem. Co., In re*,
837 F.2d 469 (Fed. Cir. 1988) ....................................................30, 31

*Fanduel, Inc. v. Interactive Games LLC*,
966 F.3d 1334 (Fed. Cir. 2020) ....................................................18

*Fielder, In re*,
471 F.2d 640 (C.C.P.A.1973) ....................26

*Fulton, In re*,
391 F.3d 1195 (Fed. Cir. 2004) ....................34

*Gartside, In re*,
203 F.3d 1305 (Fed. Cir. 2000) ....................13, 16, 28

*Gemtron Corp. v. Saint-Gobain Corp.*,
572 F.3d 1371 (Fed. Cir. 2009) ....................31, 36

*Genzyme Therapeutic Prods. Ltd. P'ship v. Biomarin Pharm. Inc.*,
825 F.3d 1360 (Fed. Cir. 2016) ....................18, 19

*George M. Martin Co. v. All. Mach. Sys. Int'l LLC*,
618 F.3d 1294 (Fed. Cir. 2010) .................... 35-36

*Google Tech. Holdings LLC, In re*,
980 F.3d 858 (Fed. Cir. 2020) ....................23, 26

*Gurley, In re*,
27 F.3d 551 (Fed. Cir. 1994) ....................33

*Hill-Rom Servs., Inc., In re*
634 F. App'x 786 (Fed. Cir. 2015) ....................22

*Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*,
821 F.3d 1359 (Fed. Cir. 2016) ....................30, 31

*Innovention Toys, LLC v. MGA*,
611 F. App'x 693 (Fed Cir. 2015) .................... 31-32

*Jolley, In re*,
308 F.3d 1317 (Fed. Cir. 2002) ....................14

*Jung, In re*,
637 F.3d 1356 (Fed. Cir. 2011) ....................19

*Kahn, In re*,
441 F.3d 977 (Fed. Cir. 2006) ....................26

*Kappos v. Hyatt*,
566 U.S. 431 (2012)....27

*Kronig, In re*,
539 F.2d 1300 (C.C.P.A. 1976)....19

*KSR Int'l Co. v. Teleflex Inc.*,
550 U.S. 398 (2007)....29

*K/S Himpp v. Hear-Wear Techs., LLC*,
751 F.3d 1362 (Fed. Cir. 2014)....27, 34

*McLaughlin, In re*,
443 F.2d 1392 (C.C.P.A. 1971)....28

*Morsa, In re*,
803 F.3d 1374 (Fed. Cir. 2015)....33

*Mouttet, In re*,
686 F.3d 1322 (Fed. Cir. 2012)....13, 16

*Para-Ordnance Mfg., Inc. v. SGS Imps. Int'l, Inc.*,
73 F.3d 1085 (Fed. Cir. 1995)....13

*Pfizer, Inc. v. Apotex, Inc.*,
480 F.3d 1348 (Fed. Cir. 2007).... 30-31

*Redline Detection, LLC v. Star Envirotech, Inc.*,
811 F.3d 435 (Fed. Cir. 2015)....22, 23

*Schreiber, In re*,
128 F.3d 1473 (Fed. Cir. 1997)....32

*Schulze, In re*,
346 F.2d 600 (C.C.P.A. 1965)....31

*SmithKline Beecham Corp. v. Apotex Corp.*,
439 F.3d 1312 (Fed. Cir. 2006)....16

*Soni, In re*,
54 F.3d 746 (Fed. Cir. 1995)....36

*Spatz, In re*,
387 F.2d 663 (C.C.P.A. 1967) ........ 24

*Ultratec, Inc. v. CaptionCall, LLC*,
872 F.3d 1267 (Fed. Cir. 2017) ........ 27, 34

*VirtualAgility Inc. v. Salesforce.com, Inc.*,
759 F.3d 1307 (Fed. Cir. 2014) ........ 26

*Watts, In re*,
354 F.3d 1362 (Fed. Cir. 2004) ........ 13

**Statutes**

35 U.S.C. § 103 ........ 13

35 U.S.C. § 141 ........ 27

35 U.S.C. § 144 ........ 22, 27-28

35 U.S.C. § 145 ........ 27

**Regulations**

37 C.F.R. § 1.98(a)(2) ........ 23, 26

37 C.F.R. § 1.114 ........ 27

37 C.F.R. § 1.114(a)(3) ........ 27

37 C.F.R. § 1.116 ........ 20

37 C.F.R. § 1.116(e) ........ 23, 26

37 C.F.R. § 1.132 ........ 23, 26

37 C.F.R. § 1.181 ........ 21

37 C.F.R. § 41.33 ........ 20, 21

37 C.F.R. § 41.37(c)(2) ........ 25

37 C.F.R. § 41.40 ........ 21

37 C.F.R. § 41.41 ........ 9, 20

37 C.F.R. § 41.41(a)..........20

37 C.F.R. § 41.41(b)(2) ..........20

37 C.F.R. § 41.50(c)..........22

37 C.F.R. § 41.52(a)(4)..........22

**<u>Other Authorities</u>**

MPEP § 1206 ..........21

MPEP § 1207.03 ..........16, 20

MPEP § 1207.03(a)..........20

MPEP § 1207.03(a)(II) ..........21

## STATEMENT OF RELATED CASES

The Director is not aware of any other appeal from the Patent Trial and Appeal Board ("Board") of the United States Patent and Trademark Office ("USPTO") in connection with the patent application at issue in this appeal that has previously been before this Court. The Director is unaware of any case pending in this or any other court that will directly affect or directly be affected by the Court's decision in this appeal. However, an appeal from the Board in a related design patent application on "the ornamental design for a waffle having a waffle pattern side and a smooth side" is currently pending before this Court. *See In re Samuels*, Case No. 22-1121 (Fed. Cir. Nov. 5, 2021). The Director does not believe the outcome in this case will control the outcome in that case or vice versa.

## STATEMENT OF THE ISSUES

Appellants' claim 1 is directed to an "asymmetrical planar waffle product" made from dough or batter placed between two baking plates, one with a waffle pattern and the other side with a smooth surface. The Board affirmed the Examiner's rejection of the claim as obvious over the prior art. Specifically, Krepshaw describes a grill (called the "Big Boss Grill") with a variety of removable, "interchangeable" plates including a waffle plate and a smooth plate, and expressly teaches using it to make "one-sided waffles." Freeman further teaches the unremarkable—and undisputed—proposition that waffles are traditionally made using "batter." The Board agreed with the Examiner that it would have been obvious to make one-sided waffles, as taught by Krepshaw, using batter, given Freeman's teaching that it is the conventional material for making waffles.

Before the Board, Appellants argued, *inter alia*, that the removable plates of the Big Boss Grill could not be "mixed," Krepshaw's teaching notwithstanding. At the oral hearing, Appellants' counsel referenced for the first time on appeal to a "manual" for the Big Boss Grill to support this argument. The Board, however, declined to consider this new evidence because it was not of record in the appeal.

Thus, the issues on appeal are:

1. Whether the Board properly declined to consider Appellants' new evidence raised for the first time at oral argument; and

2. Whether substantial evidence supports the Board's underlying factual findings and whether its legal conclusion that claim 1 would have been obvious over the prior art is correct as a matter of law.

## STATEMENT OF THE CASE

This appeal arises from examination of U.S. Patent Application No. 15/168,768 ("the '768 application") filed by appellants Justin Samuels and Samuel Rockwell ("Appellants"), entitled "Asymmetrically Patterned Baked Bread Food." (Appx11-25.) The Board affirmed the Examiner's rejection of claim 1 as obvious over Krepshaw[1] in view of Freeman.[2] (Appx1-7; Appx339-353; Appx336; Appx257-266.) Appellants appealed the Board's decision to this court.

## I. THE '768 APPLICATION

The subject application discloses baked bread food, and more particularly waffles, having patterning on two sides that is asymmetrical, i.e., the pattern on one side is not identical to the pattern on the other side. (Appx11.) The "Background of the Invention" section acknowledges that both waffles and waffle-makers were well known in the art. (Appx11.) The application, in fact, identifies several examples of prior art waffle-makers, one of which is "incorporated herein by reference in its

[1] Brian Krepshaw, "Mix-and-match grill begs for mixing, not matching," C/Net Review (02 February 2010), available at http://www.cnet.com/news/mix-and-match-grill-begs-for-mixing-not-matching (retrieved on 22 August 2017). (Appx228; *see also* Appx327-328.)

[2] U.S. Pat. No. 3,799,047, entitled "Waffle Baking Apparatus," to Gerald R. Freeman. (Appx439-445.)

entirety." (Appx11-12 (referring to "US Patent Application Publication No. US 2005/0247210" and "the '210 Application".)

In particular, the Background section discusses a prior art reference that describes a waffle-like product having a waffle pattern on one side and a flat surface on the opposite side. (Appx12.) The product is made by slicing an intermediate waffle on an equatorial plane to produce a set of waffle products, each having one baked face with a waffle pattern and one manufactured flat face. (*Id*.)

Despite its distinct "asymmetrically patterned" appearance, the present application contends that there are allegedly "[t]wo drawbacks" to the prior art one-sided waffles. (Appx13.) The first is that "the indentations are substantially shallower than those of a standard waffle." (*Id*.) The second is that "the flat side formed by slicing through the middle of the intermediate waffle comprises a raw bread surface formed in the central, and therefore least-baked, portion of the intermediate waffle" and toasting the sliced waffle "requires an additional cooking step." (*Id*.) The present application seeks to overcome these purported shortcomings in the art of waffle making.

Claim 1 recites:

> 1. An asymmetrical planar waffle product, comprising:
>
> a first patterned baked surface that is a negative image of a first positive relief pattern in an associated first baking plate, and a second patterned baked surface that is a negative image of a second positive relief pattern in an associated second baking plate,

> wherein said first and second patterned baked surfaces have been formed by exposing a waffle-forming material directly against said respective first and second positive relief patterns,
>
> wherein said waffle-forming material is selected from the group consisting of batter and dough,
>
> wherein said first positive relief pattern is a waffle pattern,
>
> wherein said second positive relief pattern is a smooth surface, and
>
> wherein at least one of said first and second baking plates further comprises a stop extending above said first and second positive relief pattern to limit proximity of said baking plates to each other, thereby defining a chamber therebetween for receiving said waffle-forming material.

(Appx325; *see also* Appx2.)

## II. THE PRIOR ART

### A. Krepshaw

Krepshaw is entitled "Mix-and-Match grill begs for mixing, not matching," and is a review of the "Big Boss Grill" with its "six different interchangeable grill plates." (Appx208, Appx211, Appx228; *see also* Appx326-328.[3]) The Big Boss Grill, as shown in Krepshaw, is much like the cooking apparatus shown in the '210 Application discussed in the Background section. Both include "a variety" of removable cooking plates. (*Compare* Appx267, Appx270-272 (Big Boss Grill) *with* Appx14-16 (describing "the variety of grilling surfaces" in the "prior art" '210

[3] The record includes multiple copies of Krepshaw, including a more readable version attached to Appellant's Appeal Brief. (Appx326-328.)

Application). According to Krepshaw, the Big Boss Grill "comes with six different interchangeable grill plates," as shown below:



(Appx327.) The important difference between Krepshaw's and the '210 Application's disclosure, however, is that Krepshaw explicitly suggested, "mixing, not matching" the sets of plates. (Appx327.) He also taught making "one-sided waffles" by "mixing" the plates. (*Id.*) The author acknowledged that, "I don't know if trying to make one-sided waffles would just end up being a messy batter explosion, but I do know it's the first thing I'd try—either that or waffled doughnuts, a creation, I think, whose time has come." (Appx327-328.)

B. Freeman

Freeman describes a conventional waffle iron comprising hingedly connected upper and lower waffle plates having respective heating elements. (Appx439-445; Appx343 (citing Freeman, "col 2, line 44-59)".) Freeman further teaches making a

waffle by pouring batter on the bottom plate, closing the top griddle plate, and, after a suitable baking time, raising the top plate to expose the baked waffle. (Appx444, col. 4, lines 26-36; Appx343 (citing same).)

## III. PROCEEDINGS BEFORE THE EXAMINER

During examination, the Examiner finally rejected a prior version of claim 1 (Appx246), which lacked the batter or dough limitation, as obvious over Krepshaw. (Appx257-266.) According to the Examiner, "Krepshaw teaches forming a 'one-sided' waffle using one traditional waffle plate and another plate to form the other side. As such, it would have been obvious to use a smooth plate to form the other side of the waffle in order to provide a different texture and waffle eating experience…." (Appx260.) The Examiner also rejected then dependent claim 8 (Appx247), which limited the waffle-forming material to batter or dough, as obvious over Krepshaw in view of Freeman. (Appx261.) According to the Examiner, while "Krepshaw does not specifically teach that the waffle forming material is a batter," Freeman does and "[i]t would be obvious to use batter as the waffle forming material in Krephaw since batter is the conventional material that is used to form waffles as taught in Freeman." (*Id*.)

Appellants filed a series of two after-final amendments further amending claim 1. (Appx282-285; Appx299-302.) With the latter amendment, Appellants

incorporated the batter or dough limitation of claim 8 into claim 1, and cancelled claim 8. (Appx303.)

In a series of two Advisory Actions, the Examiner entered the amendments to claim 1, but maintained the obviousness rejections. (Appx292-295; Appx335-337.) Because Appellants had incorporated the limitation of claim 8 into claim 1 via the second amendment, the Examiner explained that "claim 1 is now rejected over Krepshaw in view of Freeman since Freeman was relied upon to teach the batter limitation of claim 8." (Appx336.)

## IV. APPEAL TO THE BOARD

Three days before the Examiner acted on their second amendment, Appellants filed their Appeal Brief. (Appx333 (dated "23-SEP-2019").) As shown in the accompanied claims appendix, however, Appellants anticipated that the Examiner would enter the second amendment incorporating the "batter" limitation of claim 8 into claim 1. (Appx325.) As a result, Appellants acknowledged that only independent claim 1 remained at issue on appeal before the Board. (Appx311-312.) However, before the Board, Appellants framed the issue as "whether the Patent Examiner erred by relying on … 'Krepshaw' … in view of Emson Big Boss Grill.com … to support the rejection of Claim 1 under 35 USC § 103(a)," even though that was not an outstanding rejection. (Appx314.) Appellants attached both references to their Appeal Brief "for easy references." (Appx314; Appx326-328

(Krepshaw); Appx329-332 (Big Boss Grill.com).) Appellants did not cite to nor attach any other Big Boss Grill literature to their Appeal Brief.

In the Examiner's Answer, the Examiner reiterated her rejection of claim 1 as "unpatentable over Krepshaw … in view of Freeman" (not Big Boss Grill.com). (Appx340-343.) She explained that "Krepshaw teaches a 'one-sided waffle' formed from a grilling apparatus that comprises interchangeable, removable plates" including "a waffle pattern, grill pattern, griddle pattern, sandwich pattern," etc. (Appx342.) Given the "limited number of grill plates," according to the Examiner, "one would have a reasonable expectation of success to achieve a waffle product with one side being smooth and the other having a waffle pattern." (*Id*.)

With respect to the "batter" limitation incorporated from claim 8 (now included in claim 1), the Examiner explained that "waffles are typically formed from a batter … as taught in Freeman (abstract, col 2, line 44-59; col 4, line 26-36)." (Appx343.) As such, it "would have been obvious to use batter as the waffle forming material in Krepshaw since batter is the conventional material that is used to form waffles." (*Id*.; *see also* Appx345-352.)

To avoid any confusion, the Examiner explained the procedural posture of the Krepshaw-in-view-of-Freeman rejection of claim 1 in light of Appellants' flurry of filings:

> The appellant filed an amendment to the claims on 9/12/2019 changing the "asymmetrically patterned baked bread food" limitation to "asymmetrical planar waffle product." Furthermore, the limitation regarding the "waffle-forming material" in claim 8 was incorporated into claim 1. These claim amendments were entered by the examiner on 9/26/2019, after the appellant filed the appeal brief on 9/23/2019. Due to appellant's amendment, the rejection of claim 1 was modified to be over Krepshaw in view of Freeman as repeated above.

(Appx343-344; *see also* Appx355 (noting that "the advisory action … entered the amendment on 9/12/2019 and changed the rejection to Krepshaw in view of Freeman, as necessitated by amendment").)

Appellants requested an oral hearing before the Board, but did not file a reply brief responding to the Examiner's Answer, as permitted by 37 C.F.R. § 41.41. (Appx383-384.) During the hearing, Appellants' counsel made repeated references to certain Big Boss Grill literature including "the instruction manual and recipe book." (Appx394-395; Appx398-399.) Early on in the hearing, Administrative Patent Judge Wilson interrupted Appellants' counsel (Mr. Sharinn) and pointedly asked him whether these documents are "in the record":

> JUDGE WILSON: I was going to simply ask, this is Judge Wilson again; I was simply going to ask about if the manual that you were just referencing; is that in the record, it must be, I assume or is it?
>
> MR. SHARINN: Well, it was never submitted. The manual was never submitted, but it was referenced; yes, Your Honor."
>
> JUDGE WILSON: Okay. But, the manual itself is not part of the record, as far as you know?
>
> MR. SHARINN: As far as I recall. I would be lying to say that I knew exactly whether in fact that manual had specifically been submitted as evidence or not.

(Appx399-400.)

Thereafter, the Board issued its decision affirming the Examiner's rejection of claim 1 as obvious over Krepshaw in view of Freeman. (Appx1-7.) The Board was not persuaded by Appellants' argument that "'[n]one of the disclosures for the Big Boss Grill cited by the Examiner suggests or discloses that two plates of differing patterns may be used in combination to produce' the claimed one-sided waffle." (Appx4.) First, the Board noted that the claim is to the waffle itself, "not the device for making such a product." (*Id.*) Second, the Board observed that the obviousness rejection is based on Krepshaw, which explicitly states "'Now I don't know if trying to make one-sided waffles would just end up being a messy batter explosion, but I do know it's the first thing I'd try.'" (Appx4.) The Board found this language in Krepshaw to clearly suggest making a one-sided waffle by mixing the interchangeable plates. (*Id.*)

To the extent that Appellants attempted to support their teaching away argument with "documentation pertaining to the Big Boss Grill" referenced at the oral hearing, the Board explained that it "is not of record and, therefore, will not be considered as evidence by the Board." (*Id.*, n.3; *see also* Appx6 ("such literature is not of record in the present appeal").) Moreover, the Board noted that even if the Big Boss Grill manual required using two plates "at all times," as Appellants'

counsel argued, that "would not teach away from using two different plates." (Appx6, n.4.) This appeal followed.

## SUMMARY OF THE ARGUMENT

Substantial evidence supports the Board's findings that claim 1 would have been obvious over the prior art. Krepshaw explicitly teaches "mixing, not matching" the "interchangeable" grill plates of a commercially available table-top grill ("the Big Boss Grill") to make "one-sided waffles." As the Board found, with only six different designs from which to choose—one of which being a waffle design—it would be obvious to combine the waffle plate with one of the other smooth plates to make the waffle because the plates are "interchangeable." It was well within the level of skill in the art to adjust "the amount, consistency, or depth of the batter to be able to make a claimed one-sided waffle," in light of Freeman's teaching that batter is a conventional waffle forming material. Appellants' argument to the contrary is belied by its own specification, which does little more than suggest mixing a smooth plate and a waffle plate in an otherwise conventional grill with removable plates.

Appellants' argument that the Board improperly entered a new ground of rejection by relying on Freeman in combination with Krepshaw is also belied by the record. The record in this case demonstrates that the Examiner rejected claim 1 as obvious over Krepshaw in view of Freeman when she entered Appellants' after-final

amendment incorporating the limitations of dependent claim 8, which stood rejected over the combination of Krepshaw and Freeman, into claim 1. At that point, it was incumbent upon Appellants to rebut the rejection in their briefing before the Board, which they failed to do. But even if the Board's decision could be construed as including a new ground of rejection, Appellants waived their right to challenge it before this Court by failing to seek rehearing before the Board.

Appellants' argument that the Board erred by "excluding" or otherwise ignoring certain Big Boss Grill "literature" is meritless. As Appellants' admitted at the oral hearing, that literature "was never submitted" to the Board for its consideration. The "product literature" attached to its Appeal Brief was a single web page cited by the Examiner, not the "manual" and "recipe book" now relied upon in this Court. Because these additional documents were not properly presented to the Board, the Board did not err by not considering them.

Appellants' long-felt but unsatisfied need, reasonable expectation of success, and teaching away arguments all rely on these extra-record documents for support, and thus fail for the same reason. Beyond the extra-record documents, all that remains is unsupported attorney arguments, which are insufficient to rebut the Board and Examiner's obviousness findings. And, even if this Court were to consider the extra-record documents, they merely advise that two plates be used at all times, not

matching plates, and thus do not demonstrate nonobviousness. Accordingly, this Court should affirm.

## ARGUMENT

### I. STANDARD OF REVIEW

Appellants have the burden to show that the Board committed reversible error. *In re Watts*, 354 F.3d 1362, 1369 (Fed. Cir. 2004). Obviousness under 35 U.S.C. § 103 is a legal conclusion based on underlying factual findings. *In re Gartside*, 203 F.3d 1305, 1316 (Fed. Cir. 2000). "The scope and content of the prior art … are determinations of fact." *In re Mouttet*, 686 F.3d 1322, 1330 (Fed. Cir. 2012). The review of any objective evidence of nonobviousness, such as teaching away or unexpected results, is also a factual inquiry, *Para-Ordnance Mfg., Inc. v. SGS Imps. Int'l, Inc.*, 73 F.3d 1085, 1088 (Fed. Cir. 1995), as is reasonable expectation of success, *Acorda Therapeutics, Inc. v. Roxane Labs., Inc.*, 903 F.3d 1310, 1328 (Fed. Cir. 2018).

This Court reviews the Board's factual findings for substantial evidence and its ultimate determination of obviousness without deference. *Gartside*, 203 F.3d at 1316. Substantial evidence is "something less than the weight of the evidence but more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Mouttet*, 686 F.3d at 1331 (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229-30 (1938)). "Where two different

conclusions may be warranted based on the evidence of record, the Board's decision to favor one conclusion over the other is the type of decision that must be sustained by this court as supported by substantial evidence." *In re Bayer Aktiengesellschaft*, 488 F.3d 960, 970 (Fed. Cir. 2007) (citing *In re Jolley*, 308 F.3d 1317, 1329 (Fed. Cir. 2002)).

## II. THE BOARD RIGHTLY DETERMINED THAT CLAIM 1 WOULD HAVE BEEN OBVIOUS OVER KREPSHAW IN VIEW OF FREEMAN

The Board's decision finding that claim 1 would have been obvious over the prior art is supported by substantial evidence and correct as a matter of law. As both the Board and Examiner found, "Krepshaw teaches a one-sided waffle formed from a grilling apparatus which comprises interchangeable, removable plates… includ[ing] one with a waffle pattern and some that include a smooth, flat surface (i.e., the sandwich and griddle plates)." (Appx3; Appx342-343.) That finding is supported by substantial evidence. The title of Krepshaw itself teaches that the Big-Boss Grill, with its six different "interchangeable" plates, "begs for mixing, not matching." (Appx327; *see also* Appx270 ("INTERCHANGEABLE").) The first combination he suggested was using one waffle plate and one of the other smooth plates, such as "grill, griddle, [or] sandwich," to make "one-sided waffles." (Appx327.) As the Examiner explained, with only "a limited number of grill plates" from which to choose ("only 6 designs" in the case of the Big Boss Grill), "one

would have a reasonable expectation of success to achieve a waffle product with one side being smooth and the other having a waffle pattern." (Appx345.) Regarding the limitation in claim 1 requiring a stop that defines a chamber, the Examiner correctly found that "all plates contain a small lip or stop around the perimeter extending above said first and second positive relief pattern to limit proximity of said baking plates to each other thereby defining a chamber therebetween for receiving said waffle-forming material. The stop inherently defines a depth that would create a chamber." (Appx343; *see also* Appx327 (showing plates with stops); Appx346 ("each plate has a small lip").)[4]

The use of batter to form the "one-sided waffles" taught in Krepshaw was equally obvious, in light of Freeman. As found by the Examiner, "waffles are typically formed from a batter that is poured onto a waffle iron comprising an upper and lower plate as taught in Freeman." (Appx343.) According to Freeman, "[a] waffle may be made by disposing batter on the bottom plate 18 and closing the top griddle plate 19." (Appx444, col. 4, ll. 28-30.)

A skilled baker also would have had a reasonable expectation of success making Krepshaw's one-sided waffle using Freeman's batter. As the Examiner

[4] While it is a bit difficult to make out in the reproduction of Krepshaw in the appendix, the "lip or stop" on each plate is clearly visible on the original source image. *See* Appx267 (citing https://web.archive.org/web/20100806081025/https://www.bigbossgrill.com/).

explained and the Board accepted, "a person of skill in the art would have adjusted the amount, consistency, or depth of the batter to be able to make a claimed one-sided waffle, even if doing so created a mess." (Appx5; Appx346 (skilled artisan "could easily adjust" these parameters "to ensure that the batter can remain in the plate and not create a mess."). As a result, the "asymmetrical planar waffle product" having a "waffle pattern" on one side and a "smooth surface" on the other made from "batter" recited in claim 1 is obvious. *See Gartside*, 203 F.3d at 1319. The Board's findings are supported by substantial evidence. *See Mouttet*, 686 F.3d at 1331.

## III. APPELLANTS' ARGUMENTS LACK MERIT

Before this Court, Appellants argue that the Board committed two "Judicial Error[s]" and several "Evidentiary" ones. *See* Br. at ii. None of these arguments are meritorious and all other arguments that could have been raised in their opening brief now have been forfeited. *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006) ("Our law is well established that arguments not raised in the opening brief are waived.").

### A. Appellants Were Afforded Adequate Notice and a Reasonable Opportunity to Challenge the Examiner's Reliance on Freeman

Appellants argue that the Examiner failed to provide them with adequate notice of her additional reliance on Freeman or provide them with the requisite two months to respond to this purported "New Ground of Rejection," citing MPEP 1207.03. Br. at 11-12. Appellants are wrong on both the facts and the law.

First, the Krepshaw/Freeman combination was not a surprise to Appellants. The Examiner raised Krepshaw in view of Freeman as a basis to reject dependent claim 8's "batter and dough" limitation eight months before Appellants filed their Appeal Brief. (Appx221 ("waffles are typically formed from a batter that is poured onto a waffle iron comprising an upper and lower plate as taught in Freeman (abstract, col 2, line 44-59; col 4, line 26-36)"); Appx216-217 (dated "01/07/2019"); *see also* Appx224 (listing "US-3799047-A" to "Freeman; Gerald R.")). In response, Appellants expressly acknowledged this rejection and argued that "neither Krepshaw *nor Freeman* discloses to use dough to make a waffle." (Appx239-240 (emphasis added).) Instead, "Freeman mentions only batter…." (Appx240.) The Examiner maintained this rejection in her final rejection of claim 8. (Appx257-264 at Appx261 (citing "Freeman")).

Freeman was not relevant to claim 1 until Appellants amended claim 1 "by incorporation of the subject matter of original Claim 8, thereby narrowing independent Claim 1" in their September 12, 2019 "Amended" after-final response. (Appx299-303.) When Appellants incorporated claim 8's "batter and dough" limitation into claim 1, the Examiner simply carried forward her reliance on Freeman to teach that same limitation in claim 1. (Appx336.)

To the extent there is any confusion in the record, it was of Appellants' own making. Appellants filed back-to-back after-final amendments adding a limitation,

only to remove it a few days later. (*Compare* Appx283 (changing "waffle" to "baked bread food") *with* Appx300 (changing "baked bread food" back to "waffle").) Appellants also simultaneously submitted: (1) a Notice of Appeal to the Board; and (2) the second after-final response. (Appx277-280; *see also* Appx303 ("The Examiner also holds, erroneously, that no Notice of Appeal has been filed.").) Appellants then filed their appeal brief less than two weeks later on September 23rd, before the Examiner had an opportunity to act on their September 12th after-final amendment. (Appx333.)

When the Examiner did act on the amendment, she made clear that in light of Appellants' after-final amendment incorporating claim 8 into claim 1, she was carrying forward her "Krepshaw in view of Freeman" rejection of amended claim 1:

> The amendments incorporating the limitations of claim 8 into claim 1 and changing the language to "asymmetrical planar waffle product" are entered. However, claim 1 is now rejected over Krepshaw in view of Freeman since Freeman was relied upon to teach the batter limitation of claim 8.

(Appx335-336 (dated 9/26/2019).) In light of this explicit explanation, necessitated by Appellants' own amendment, Appellants' argument that they lacked notice of the Examiner's rejection "strains credulity." *See Fanduel, Inc. v. Interactive Games LLC*, 966 F.3d 1334, 1340 (Fed. Cir. 2020); *see also Genzyme Therapeutic Prods. Ltd. P'ship v. Biomarin Pharm. Inc.*, 825 F.3d 1360, 1367 (Fed. Cir. 2016) (APA

and due process is satisfied when party receives "adequate notice of the issues that would be considered, and ultimately resolved").

Even assuming that this explanation came as a surprise to Appellants, the Examiner's Answer made clear that the sole rejection against claim 1 was "Krepshaw … in view of Freeman." (Appx342.) She further explained that this rejection was "[d]ue to appellant's amendment" dated "9/12/2019," which was "entered by the examiner on 9/26/2019, after the appellant filed the appeal brief on 9/23/2019." (Appx343-344; *see also* Appx355.) Again, Appellants clearly were on notice of this ground of rejection. *See In re Adler,* 723 F.3d 1322, 1327-28 (Fed. Cir. 2013) (an examiner's position on the prior art set forth in an examiner's answer provided the applicant with adequate opportunity to respond in a reply brief).

Second, Appellants also had "a fair opportunity to react to the thrust of [this] rejection." *In re Jung*, 637 F.3d 1356, 1365 (Fed. Cir. 2011) (quoting *In re Kronig*, 539 F.2d 1300, 1302-03 (C.C.P.A. 1976)); *see also Genzyme*, 825 F.3d at 1367. During prosecution, claim 8, which included the batter and dough limitation, was rejected over the combination of Krepshaw and Freeman. Appellants could have, and did, respond to that rejection. (Appx239-240.) Although Appellants prematurely filed their appeal brief before the Board, Appellants assumed that their September 12 after-final amendment, incorporating the limitation of claim 8 into claim 1, had been entered by the Examiner. (Appx312-314.) Having already made

the argument that "neither Krepshaw nor Freeman discloses to use dough to make a waffle," with respect to claim 8, there is no reason why Appellants could not have made that same argument to the Board with respect to this same limitation now incorporated into claim 1. (Appx239-240.) Appellants also had an opportunity to file a reply brief, responding directly to the Examiner's Answer, which squarely put Freeman's teaching before the Board. (Appx343 ("waffles are typically formed from a batter … as taught in Freeman").) Rule 41.41 allowed Appellants to file a reply brief responding "to an argument raised in the examiner's answer, *including any designated new ground of rejection*." 37 C.F.R. § 41.41(b)(2) (emphasis added). Moreover, that rule gave Appellants the full "two months" of time they now argue they were denied. *See* 37 C.F.R. § 41.41(a) (reply due within "two months" of the examiner's answer). Therefore, Appellants' were on notice of and had multiple opportunities to respond to the Freeman reference. *See Belden Inc. v. Berk-Tek LLC*, 805 F.3d 1064, 1082 (Fed. Cir. 2015) (due process may take several different forms including surreply evidence and argument).

Moreover, the rejection of claim 1 over Krepshaw in view of Freeman was not a "new ground of rejection," and thus MPEP 1207.03 does not even apply. Section 1207.03(a) of the MPEP, entitled "Determining Whether a Ground of Rejection is New," provides that when:

> (A) Applicants file an amendment under 37 C.F.R. § 1.116 or 37 C.F.R. § 41.33 that "proposes to … amend one or more claims[,]"

> (B) "appellant was advised (through an advisory action) that the amendment would be entered for purposes of appeal[,]" and
>
> (C) "the advisory action indicates which individual rejection(s) set forth in the action from which appeal has been taken would be used to reject the … amended claims,"

then:

> "(1) the appeal brief must address the rejection(s) of the added or amended claim(s)" and
>
> "(2) the examiner's answer may include the rejection(s) of the added or amended claims. *Such rejection(s) made in the examiner's answer would not be considered as a new ground of rejection*."

MPEP § 1207.03(a)(II) (emphasis added). That is exactly what happened here: (A) Appellants submitted their September 12th amendment (Appx297–310) three weeks after they filed their notice of appeal on August 22, 2019 (Appx275), which is considered under 37 C.F.R. § 41.33 (*see, e.g.*, MPEP § 1206); (B) the Advisory Action advised the Applicants that the amendment was entered (Appx336); and (C) the Advisory Action indicated that the Krepshaw/Freeman combination would be used to reject amended claim 1 (*id*.). This was not a new ground of rejection. To the extent that Appellants wanted to request designation of the rejection in the Examiner's Answer as a new ground to be given an opportunity to respond to the rejection before the Examiner, the proper course was to file a petition. *See* 37 C.F.R. § 41.40 (Any request to seek review of the primary examiner's failure to designate a rejection as a new ground of rejection in an examiner's answer must be by way of a petition to the Director under § 1.181).

Moreover, to the extent that Appellants thought the Board's "decision contains an undesignated new ground of rejection," Appellants recourse was to request rehearing within two months of that decision. 37 C.F.R. § 41.52(a)(4). By failing to request rehearing, Appellants cannot now seek relief from this Court. 37 C.F.R. § 41.50(c) ("Any request to seek review of a panel's failure to designate a new ground of rejection in its decision must be raised by filing a request for rehearing as set forth in § 41.52. Failure of appellant to timely file such a request for rehearing will constitute a waiver of any arguments that a decision contains an undesignated new ground of rejection."); *see In re Chapman*, 811 F. App'x 647, 649 (Fed. Cir. 2020); *In re Hill-Rom Servs., Inc.*, 634 F. App'x 786, 792-94 (Fed. Cir. 2015).

### B. Appellants Failed to Introduce the Big Boss Grill Manual or Recipe Book into the Record

Appellants argue that the Board erred in "excluding" certain "Big Boss Grill" documents. Br. at 13-16. This argument is equally meritless.

This Court reviews the Board's decision in this case "on the record" created before the Agency. 35 U.S.C. § 144. "Because this court's review of the PTAB's decision is confined to the four corners of that record, it is important that the applicant challenging [that] decision not be permitted to raise arguments on appeal that were not presented to the PTAB." *Redline Detection, LLC v. Star Envirotech, Inc.*, 811 F.3d 435, 450 (Fed. Cir. 2015) (cleaned up). Here, Appellants never presented the Big Boss Grill "literature" to the Board for its consideration. As a

result, they have forfeited any challenge to the Board's decision based on that literature. *Id*. (holding that Appellants' arguments based on evidence not first considered by the Board were "waived" and this Court "need not address them"); *see also In re Google Tech. Holdings LLC*, 980 F.3d 858, 863 (Fed. Cir. 2020) (arguments not properly developed before the Board are forfeited on appeal).

Appellants argue that they introduced "the Big Boss Grill Literature" into the record in three different ways: (1) in their after final submissions (citing "Appx287, Appx289, Appx305, and Appx307"); (2) in their Appeal Brief (citing "Appx315, Appx318, and Appx323"); and (3) at the oral hearing (citing "Appx394 and Appx398-399"). Br. at 14. A review of the actual record, however, belies Appellants' argument.

Appellants failed to introduce any Big Boss Grill literature into the record during prosecution. In their first after final response, Appellants made vague references to "the Big Boss Grill disclosure," "the published literature," and "the Big Boss Grill literature," but failed to identify any particular document. (Appx287, Appx289.) The same is true of Appellants' second after final response. (Appx305, Appx307.) Such indirect allusions did not make the specific Big Boss Grill "manual" or "recipe book" of record. *See* 37 C.F.R. § 1.98(a)(2) (requiring "legible copy" of non-patent literature to be considered); 37 C.F.R. § 1.116(e) (requiring affidavit or other evidence after final to be "submitted"); *see also* 37 C.F.R. § 1.132

("any evidence submitted to traverse the rejection … must be by way of an oath or declaration"). Because Appellants never submitted copies to the Examiner, it is now too late to supplement the record to include them. *In re Spatz*, 387 F.2d 663, 664 n.2 (C.C.P.A. 1967) (refusing to consider evidence on appeal "because it was not presented to the examiner during prosecution").

Appellants' arguments that these documents were put into the record before the Board is meritless. Appellants point to three places in their Appeal Brief where these documents were supposedly introduced. Br. at 14. A review of those three places, however, clearly demonstrate that Appellants did no such thing:

- Appellants refer to "Big·Boss product literature" at Appx315. However, that "literature" is defined in the preceding sentence as "the Big Boss Grill described in the product literature (Appendix III)," which is a copy of the Big Boss Grill.com webpage provided to Appellants by the Examiner—and attached as an exhibit to Appellants' own Appeal Brief. (*Compare* Appx267, Appx270-272 *with* Appx314, Appx329-332.) This "literature" does not include either of the manual or recipe book that Appellants now accuse the Board of "excluding" from the record.

- Appellants also made reference to "the Big Boss Grill literature" and, even more generally, "the published literature on the Big Boss Grill" on Appx318. However, Appellants did not identify either the manual or recipe book by name or by source, either in the file history or the internet writ large. (Appx318.) Moreover, read in context of the preceding discussion at Appx315, this "literature" simply refers to the "product literature" attached to the Appeal Brief. Otherwise, it would encompass all "published literature" related to the Big Boss Grill, whenever published.

- Finally, Appellants made reference to "the Big Boss Grill literature" as well as "the Big Boss Grill" generally at Appx323. These references did not introduce anything new into the record. (Appx323.)

Appellants' reliance on the Oral Argument is even more specious. Br. at 14. If anything, that hearing makes clear that these specific documents are not in the record. (Appx394 and Appx398-399.) There Appellants' counsel (Mr. Sharinn) conceded that: "Well, it was never submitted" and that he "would be lying" to suggest he knew otherwise. (Appx399-400.) Having failed to put this evidence properly before the Board, the Board was well within its right not to consider it. *See* 37 C.F.R. § 41.37(c)(2) ("A brief shall not include any new or non-admitted amendment, or any new or non-admitted affidavit or other Evidence.").

Appellants' argument that the Examiner's reliance on the Big Boss Grill.com website "*ipso facto*" placed all other Big Boss Grill related documents into the record is equally meritless. Br. at 14. While the Examiner's actions undoubtedly "opened the door" to other documents relevant to the Big Boss Grill, Appellants never walked through it by actually submitting these documents, as USPTO rules permitted—and required—for them to be considered. *Cf. Devices for Medicine, Inc. v. Boehl*, 822 F.2d 1062, 1067 (Fed. Cir. 1987) (trial court did not abuse its discretion by excluding exhibits when party failed to "formally offer the documents in evidence, or to make an offer of proof").

Finally, Appellants insist that this Court, "at the very least, must take Judicial Notice of the fact that the Big Boss Grill Literature was referenced in the prosecution of the underlying patent and is thus part of the record." Br. at 16 (citing *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1312-1313 (Fed. Cir. 2014)). This argument fails for several reasons.

First, whether Appellants "referenced" these documents in one of its prior submissions before the Examiner or not is irrelevant to whether the contents of those documents were properly submitted to the Examiner for her consideration. *See* 37 C.F.R. § 1.98(a)(2), § 1.116(e), and § 1.132. Second, even assuming Appellants referenced them in a response to an office action, they never explicitly relied on those specific documents before the Board and, therefore, forfeited the right to do so on appeal. *See In re Google*, 980 F.3d at 863.

Finally, this is not one of those rare instances when this Court should exercise its discretion to supplement the administrative record and consider evidence that the agency did not have before it. *See, e.g., In re Kahn*, 441 F.3d 977, 990 (Fed. Cir. 2006) ("Khan put on no evidence, but invites this court to take 'judicial notice' of the long-felt but unresolved need for a device that will help the blind read. We must decline Khan's invitation…."); *In re Fielder*, 471 F.2d 640, 642–43 (C.C.P.A.1973) (declining to take judicial notice of prior art references that appellant submitted as objective evidence of non-obviousness because appellant did not offer references to

the Board and they were not part of the record). Considering these documents for the first time on appeal, would "expand the scope" of this Court's review "beyond the grounds upon which the Board actually relied." *K/S Himpp v. Hear-Wear Techs., LLC*, 751 F.3d 1362, 1367 (Fed. Cir. 2014); *see also Ultratec, Inc. v. CaptionCall, LLC*, 872 F.3d 1267, 1274 n.6 (Fed. Cir. 2017) ("Our court does not have authority … to review evidence not considered by the agency and make factual determinations about the substance of that evidence.").

To the extent that Appellants wanted the USPTO to consider this evidence even after the Board's decision on appeal, Appellants could have filed a Request for Continuing Examination (RCE) and submitted it in an IDS. 37 C.F.R. § 1.114. Alternatively, Appellant could have challenged the Board's decision in district court under 35 U.S.C. § 145. *See Kappos v. Hyatt*, 566 U.S. 431, 439 (2012) (rejecting PTO's argument that applicant must submit all available evidence during prosecution because "a district court, unlike a court of appeals, has the ability and the competence to receive new evidence and to act as a factfinder"). Unfortunately, having chosen instead to file a notice of appeal under 35 U.S.C. § 141, those options are no longer available. *See* 37 C.F.R. § 1.114(a)(3) (RCE must be filed prior to filing a notice of appeal); 35 U.S.C. § 145 (applicant may file a district court action "unless appeal has been taken to the … Federal Circuit"). As a result, Appellants' appeal is limited to the record Appellants created before the USPTO. *See* 35 U.S.C.

§ 144; *see also Gartside,* 203 F.3d at 1315 (this Court's "review of the Board's decision is confined to the factual record compiled by the Board"). That record does not include either the Big Boss Grill manual or recipe book.[5]

**C. The Obviousness Rejection Does Not Rely on Hindsight**

On the merits, Appellants make several arguments as to why the Board's decision is erroneous. The first is that the obviousness rejection relies on "hindsight" because "Krepshaw never explicitly teaches to combine a waffle plate with a griddle plate, only that a waffle plate might be combined with any one of the other plates," Br. at 20. This argument is a red-herring because a waffle plate does not necessarily need to be combined with a "griddle plate" to meet the limitations of claim 1. The "second baking plate" of claim 1 only requires "a smooth surface," not that it be a "griddle plate" specifically. As the Board noted, "Krepshaw specifically states that there is no reason to have places on the 'bottom' side of the one-sided waffle to hold butter and syrup," suggesting that "the 'bottom' of the waffle would be smooth." (Appx5 (quoting "Krepshaw, 1")). Because Krepshaw itself suggests a one-sided waffle having a "smooth surface," the Examiner did not rely on hindsight. *See In re McLaughlin*, 443 F.2d 1392, 1395 (C.C.P.A. 1971) (so long as the obviousness

[5] For the convenience of the Court, the Director allowed Appellants to include these documents in the record before this Court rather than moving to strike the documents. By not so moving, however, the Director does not concede that these documents are part of the official record before the USPTO.

conclusion "takes into account only knowledge which was within the level of ordinary skill at the time the claimed invention was made and does not include knowledge gleaned only from applicant's disclosure, such a reconstruction is proper").

Furthermore, Krepshaw explains that the Big Boss Grill only comes with a limited number ("six") of different "interchangeable grill plates." (Appx327.) To make his "one-sided waffles," one of the plates has to be one of the "already mentioned waffle grill plates." (*Id.*) That leaves only five other plates to choose from including "grill, griddle, sandwich, omelet, and even one with round impressions for cooking doughnuts." (*Id.*) However, Krepshaw eliminates the doughnut plate from consideration because that would result in what he calls "waffled doughnuts" instead of "one-sided waffles," leaving only four remaining plates from which to choose. (Appx327-328) All of those plates have a "smooth" surface, so it would have been obvious to use any one to make the claimed waffle, just as the Examiner found. (Appx344-345 ("For example, the griddle plate and the sandwich plate both contain flat surfaces"); *see also KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 421 (2007) ("When there is a design need … and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp.")

### D. There is Substantial Evidence of Reasonable Expectation of Success

Next, Appellants argue that a POSITA would not have a "reasonable expectation of success" of combining the prior art "to meet the limitations of the claimed invention." Br. at 17-19 (quoting *Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*, 821 F.3d 1359, 1380 (Fed. Cir. 2016)). Appellants further argue that "the expectation of success must be founded in the prior art." *Id*. (quoting *In re Dow Chem. Co.*, 837 F.2d 469, 473 (Fed. Cir. 1988)). This argument also lacks merit.

For factual support, Appellants point to Krepshaw's statement that "'I don't know if trying to make one-sided waffles would just end up being a messy batter explosion, but I do know it's the first thing I'd try--either that or waffled doughnuts, a creation, I think, whose time has come.'" Br. at 18 (quoting Appx211). But the Board correctly found that, despite Krepshaw's concerns, "a person of skill in the art would have adjusted the amount, consistency, or depth of the batter to be able to make a claimed one-sided waffle, even if doing so created a mess." (Appx5.) As the Examiner explained, "Krepshaw affords a reasonable expectation of success" because, among other things, "there is a limited number of plate choices, … there is a high level of predictability using the big boss grill … and … waffle making is a well-known art." (Appx350.) This amounts to substantial evidence of reasonable expectation of success. *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1364 (Fed. Cir.

2007) ("But, once again, only a reasonable expectation of success, not a guarantee, is needed."). Appellants have not come forward with any evidence to the contrary; just attorney argument. *See, e.g., Gemtron Corp. v. Saint-Gobain Corp.*, 572 F.3d 1371, 1380 (Fed. Cir. 2009); *In re Schulze*, 346 F.2d 600, 602 (C.C.P.A. 1965) ("Argument in the brief does not take place of evidence in the record.").

Neither *Intelligent Bio-Systems* nor *Dow Chemical* is to the contrary. In *Intelligent Bio-Systems*, this Court affirmed the Board's finding that there was no reason to combine the prior art references, but disagreed that there was no reasonable likelihood of success of doing so. 821 F.3d at 1368. This Court's statement about reasonable expectation of success in *Dow Chemical* is also dicta, as that case held that there was no "suggestion" to combine the prior art in the first place, regardless of success in doing so. 837 F.2d at 473. *Dow Chemical* is also distinguishable because Krepshaw itself explicitly suggests a "one-sided waffle" made from "batter," rendering reason to combine irrelevant. (Appx327.)

Appellants further argue that "the Board made a critical error" in finding a POSITA would modify the batter as necessary to make the one-sided waffle suggested by Krepshaw. Br. at 21. "Instead," according to Appellants, "the Board should have inquired whether a [POSITA] would have reasonably expected to succeed." *Id*. (citing *Biomedical Research Inst. at Harbor-UCLA Med. Ctr. v. Eli Lilly & Co.*, 849 F.3d 1049, 1067-1068 (Fed. Cir. 2017); and *Innovention Toys, LLC*

*v. MGA*, 611 F. App'x 693 (Fed Cir. 2015)). However, the Board did make such an inquiry and agreed with the Examiner that "a person of skill in the art would have adjusted the amount, consistency, or depth of the batter to be able to make a claimed one-sided waffle, even if doing so created a mess." (Appx5.)

Appellants next argue that the Board erred "by allowing Examiner to attempt to cure the defect by improperly rejecting Krepshaw in view of Freeman." Br. at 21-22. This argument, however, mischaracterizes the Examiner's rejection. The Examiner does not rely on Freeman's hingedly connected waffle-maker, but simply for its teaching of the waffle "batter" limitation of claim 1. (Appx261.) Moreover, Appellants did not challenge the Examiner's reliance on Freeman before the Board, and has now forfeited that argument here. *In re Schreiber*, 128 F.3d 1473, 1479 (Fed. Cir. 1997).

Appellants' reasonable expectation of success argument is also undercut by their own specification. The application itself "incorporate[s]" the prior art waffle-maker described in "the '210 Publication" as its preferred embodiment. (Appx14 at ll. 25-30; *see also* Appx15 at ll. 14-18.) Appellants do not describe any modifications to that prior art waffle-maker housing or its electronics to produce the claimed one-sided waffle, merely different (i.e., "mixed, not matched") plates for use in that prior art maker. (Appx14-15; *see also* Appx16 (suggesting that "the waffle-maker disclosed in the '564 patent or, alternatively, may comprise elements

of a continuous machine similar to a continuous belt-type waffle-maker as is well known in the prior art and need not be described here").) Those plates appear to be conventional waffle and grilling plates, as in the Big Boss Grill. (Appx327.) While Fig. 4 does illustrate a cross-sectional view of those mated plates, there are no dimensions provided, suggesting that the height and/or width of the peaks and valleys are conventional. (Appx25.) If this level of disclosure is sufficient to enable one skilled in the art to make and use the invention with a reasonable expectation of success, so too is Krepshaw's teaching of "mixing, not matching" the various Big Boss Grill plates to create a "one-sided waffle." Appellants cannot have it both ways. *See, e.g., In re Morsa*, 803 F.3d 1374, 1377 (Fed. Cir. 2015) (looking to applicant's own specification to evaluate whether prior art reference is enabling).

### E. There is No Evidence of Teaching Away

Appellants also argue that the art "teaches away from using two plates having different patterns." Br. at 25. However, this argument ignores Krepshaw's explicit encouragement about "mixing, not matching" the Big Boss Grill plates. *Cf. In re Gurley*, 27 F.3d 551, 553 (Fed. Cir. 1994) (Teaching away requires a POSITA to "be discouraged from following the path set out in the reference" or "be led in a direction divergent from the path that was taken by the applicant.") There is no evidence in the record to the contrary. Appellants' attempted reliance on the Big Boss Grill manual or recipe book (Br. at 24 (citing Appx446-452)) fails because

those documents were not before the Board and cannot now be relied on in this Court. *See K/S Himpp v. Hear-Wear Techs., LLC*, 751 F.3d at 1367; *Ultratec*, 872 F.3d at 1274 n.6. Therefore Appellants' teaching away argument must be rejected. *In re Brandt*, 886 F.3d 1171, 1176 (Fed. Cir. 2018) (concluding Board did not err by affirming examiner's rejection because appellant failed to overcome *prima facie* case).

Even if the Court were to consider those documents in the first instance, they do not undermine the Board's decision. First, Appellants' teaching away argument fundamentally misapprehends that doctrine. Promoting other alternative solutions while remaining silent about the claimed solution does not constitute teaching away from the claimed solution. *In re Fulton*, 391 F.3d 1195, 1201 (Fed. Cir. 2004). Instead, "teaching away" requires the prior art to "criticize, discredit, or otherwise discourage the solution claimed…." *Id.* The extra-record Big Boss Grill literature does not rise to this level.

The Big Boss Grill literature does not affirmatively teach away from "mixing" plates. The "recipe" book is completely silent on mixing different plates. (Appx446-465.) The book's silence is not teaching away. *Fulton*, 391 F.3d at 1201. The "user manual" at most merely expresses a preference and that too does not constitute "teaching away." (Appx446-452.) In fact, that manual describes several

configurations of "mixed" plates such as a "Griddle Plate" and an "Omelet Plate." (Appx451; *see also id.* ("Omelet Plate on bottom and Griddle Plate on top").)

Appellants' apparent reliance on the following statement in the manual is not to the contrary: "Grill unit must be used with BOTH PLATES inserted on top and bottom at all times. If this is not followed, the unit's thermostat will malfunction, causing the unit to overheat and burn its fuse, damaging the unit." (Appx447.) What Appellants' fail to acknowledge, however, is that the manual includes that same admonishment for all of the plates, even those for which there is only one plate, such as the "GRIDDLE PLATE (1)" and the "OMELET PLATE (1)." (*Id.*) Read in context then, this statement merely requires two plates to be installed in the unit at all times, not two matching plates, as Appellants apparently contend.

### F. There is No Evidence of Long-Felt But Unsatisfied Need

Appellants appear to make a "long-felt but unsatisfied need" argument by suggesting that "the idea of combining their plates in dissimilar combinations did not occur" to "the makers of the Big Boss Grill"—who are "experts in the art of simultaneous two-sided cooking." Br. at 19; *see also id.* at 20 (discussing "Emerson" (*sic*) who makes the Big Boss Grill). Even assuming the manufacturer's purported silence reflects a need for one-sided waffles, Krepshaw expressly satisfied that need by disclosing "one-sided waffles" and did so soon after discovering the grill in 2010—six years before Appellants filed the '768 Application. (Appx211;

Appx327 ("begs for mixing, not matching").) As a result, "it cannot be said that any long-felt need was unsolved." *George M. Martin Co. v. All. Mach. Sys. Int'l LLC*, 618 F.3d 1294, 1304 (Fed. Cir. 2010). Furthermore, the absence of evidence of need is not evidence of need; it is merely attorney argument. *Gemtron*, 572 F.3d at 1380 ("[U]nsworn attorney argument ... is not evidence and cannot rebut ... other admitted evidence....").

### G. There is No Evidence of Unexpected Results

Finally, Appellants contend that the Board erred by "fail[ing] to consider evidence of unexpected results," in particular the Big Boss Grill "literature." Br. at 22. However, this is a strawman argument. They argue that their one-sided waffle achieves unexpected results over the "one-sided waffle slice" discussed in the Background of their application. *Id*. at 22-23. As the Board noted, however, this does not respond to the Examiner's rejection which is based on a baked "one-sided waffle" of Krepshaw, not the sliced one discussed in the Background. (Appx5.) Moreover, Appellants' self-serving description of the purported advantages of its invention over a subset of the prior art is entitled to little patentable weight. *CFMT, Inc. v. Yieldup Int'l Corp.*, 349 F.3d 1333, 1342 (Fed. Cir. 2003) ("An applicant cannot prove unexpected results with attorney argument and bare statements without objective evidentiary support"); *In re Soni*, 54 F.3d 746, 750 (Fed. Cir. 1995) ("'It is well settled that unexpected results must be established by factual evidence. Mere

argument or conclusory statements in the specification does not suffice.'" (quoting *In re De Blauwe*, 736 F.2d 699, 705 (Fed. Cir. 1984)).

## CONCLUSION

The Board found the claimed "asymmetrial planar waffle product" recited in claim 1 to be obvious over Krepshaw in view of Freeman. Because the Board's findings are supported by substantial evidence, and its ultimate conclusion of obviousness is correct as a matter of law, the Court should affirm the Board's decision. Appellants' arguments to the contrary are without merit.

Dated: December 13, 2021

Respectfully submitted,

*<u>/s/ Peter J. Ayers</u>*
FARHEENA Y. RASHEED
Acting Solicitor

AMY J. NELSON
Acting Deputy Solicitor

PETER J. AYERS
Senior Counsel for Patent Law and Litigation

OMAR F. AMIN
Associate Solicitor

Office of the Solicitor
U.S. Patent & Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313-1450
(571) 272-9035

*Attorneys for the Director of the U.S. Patent and Trademark Office*

## Certificate of Compliance

Pursuant to Fed. R. App. Proc. 32(a)(7), I certify that the foregoing BRIEF FOR DIRECTOR complies with the type-volume limitation required by the Court's rule. The total number of words in the foregoing brief, excluding table of contents and table of authorities, is 8,711 words as calculated using the Microsoft Word® software program.

*/s/ Peter J. Ayers*

Peter J. Ayers
Senior Counsel for Patent Law
and Litigation
U.S. Patent and Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313-1450